IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ROANOKE RIVER BASIN ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV561 |
| | ) | |
| DUKE ENERGY PROGRESS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Roanoke River Basin Association (the "Association"), initiated this citizen enforcement action concerning the Mayo Steam Electric Plant located in Person County, North Carolina (the "Mayo Plant"). (ECF No. 1.) The suit alleges that Defendant, Duke Energy Progress, LLC ("Duke Energy"), has violated the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*, and the Coal Combustion Residuals Rule ("CCR Rule" or the "Rule"), 40 C.F.R. § 257.50 *et seq.*, which became effective October 14, 2015. (*Id.*; *see* 80 Fed. Reg. 21,302 (April 17, 2015).) Before the Court is Duke Energy's Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (ECF No. 9.) On January 30, 2018, the Court heard oral argument on the motion and for the reasons that follow, the Court grants Duke Energy's motion.

**I.      PARTIES**

The Association is a "non-profit public interest organization[,] with members in North Carolina and Virginia," and states that its mission is "to establish and carry out a strategy for

the development, use, preservation, and enhancement of the resources of the Roanoke River [B]asin." (ECF No. 1 ¶ 12.) Its members include "local governments, non-profit, civic and community organizations, regional government entities, businesses, and individuals." (*Id.*) These members own property, fish, and enjoy other recreational activities in the Roanoke River Basin, including in the vicinity of, and downstream from, the Mayo Plant. (*Id.* ¶ 13.)

Duke Energy owns and operates the Mayo Plant, (*Id.* ¶¶ 3, 16), which "produces electricity by burning coal to produce steam and generate power." (ECF No. 10 at 4; *see* ECF No. 1 ¶ 16.) The residuals from the facility's coal combustion process are stored in an unlined lagoon/surface impoundment on the banks of Mayo Lake. (ECF No. 1 ¶ 3; ECF No. 10 at 4.)

## II. BACKGROUND

On April 17, 2015, the United States Environmental Protection Agency ("EPA") published the CCR Rule "to regulate the disposal of coal combustion residuals . . . as solid waste under subtitle D of the [RCRA]."[1] 80 Fed. Reg. 21,302 (April 17, 2015). The CCR Rule establishes "national minimum criteria for existing and new CCR landfills and . . . CCR surface impoundments . . . consisting of location restrictions, design and operating criteria, groundwater monitoring and corrective action, closure requirements and post closure care, and recordkeeping, notification, and internet posting requirements." 80 Fed. Reg. at 21,302.

---

[1] The "RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996). The primary purpose of the RCRA "is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Id.* (quoting 42 U.S.C. § 6902(b)).

The Rule is self-implementing in that "facilities are directly responsible for ensuring that their operations comply with [the Rule's] requirements." *Id.* at 21,311. The Rule's requirements are enforceable by States and through citizen suits. *See* 42 U.S.C. § 6972; *see also* 80 Fed. Reg. at 21,427.

The preamble to the CCR Rule provides, in pertinent part, that because the Rule establishes "minimum requirements only . . . states may . . . impose more stringent requirements." 80 Fed. Reg. at 21,332. Further, the preamble provides that the Rule's "criteria do not preempt other state and federal requirements." *Id.* Prior to the enactment of the CCR Rule, North Carolina enacted the Coal Ash Management Act of 2014 ("CAMA"), N.C. Gen. Stat. § 130A-309.200 *et seq.* Under CAMA, the North Carolina Department of Environmental Quality ("NCDEQ") is charged with developing proposed classifications for all CCR sites, based on an assessment of the "sites' risks to public health, safety, and welfare; the environment; and natural resources[,] and shall determine a schedule for closure and required remediation." N.C. Gen. Stat. § 130A-309.213(a)-(b).[2]

Under the CCR Rule, "[t]he owner or operator of a CCR unit must prepare a written closure plan," which includes information specified in 40 C.F.R. § 257.102(b)(1)(i)–(vi). 40 C.F.R. § 257.102(b). Pursuant to the Rule, on November 11, 2016, Duke Energy published a Closure Plan (the "Plan") for the Mayo Plant, dated October 10, 2016. (ECF No. 1 ¶ 44; ECF

---

[2] Subsequent to the EPA's promulgation of the CCR Rule, Congress enacted the Water Infrastructure Improvements for the Nation Act (the "WIIN Act"), on December 16, 2016. Pub. L. No. 114-322, 130 Stat. 1628 (codified in scattered sections of the U.S.C.). The WIIN Act expressly authorizes states to create "a permit program or other system" of regulation for CCR disposal, subject to EPA approval and oversight, that would "operate in lieu of regulation of coal combustion residuals units" under the CCR Rule. 42 U.S.C. § 6945(d)(1)(A). To date, however, North Carolina has not created such a permit program.

No. 1-5.) On June 20, 2017, after providing notice, as required by the RCRA and the Rule, to EPA and NCDEQ, the Association filed this lawsuit alleging, among other things, that "Duke Energy has prepared and published a CCR Rule closure plan that fails to meet the minimum requirements for closure plans" in violation of the Rule. (ECF No. 1 ¶¶ 9, 52; *see* ECF No. 1-2.) Specifically, the Association requests that this Court "[i]ssue a declaratory judgment stating that Duke Energy is violating the [CCR] Rule and the [RCRA] by failing to comply with the closure plan requirements of the Rule and violating the open dumping prohibition of the [RCRA]." (ECF No. 1 at 17, Prayer for Relief.) Further, the Association requests "preliminary and permanent injunctive relief to ensure that Duke Energy files a closure plan for its Mayo coal ash lagoon that satisfies the requirements of the Act." (*Id.*)

On August 21, 2017, Duke Energy filed the instant motion to dismiss the Association's Complaint based on lack of subject matter jurisdiction. (ECF No. 9.)

## III. STANDARD OF REVIEW

The court's subject matter jurisdiction is limited in that the court "possess[es] only the jurisdiction authorized . . . by the United States Constitution and by federal statute." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). A motion under Rule 12(b)(1) governs dismissal for lack of subject-matter jurisdiction, and raises the question of "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). Under Article III of the United States Constitution, the jurisdiction of a federal court is limited to cases and controversies, which implicates certain doctrines to include standing and ripeness. *See* U.S. Const. art. III, § 2; *Susan B. Anthony List v. Driehaus*, 134 S. Ct.

4

2334, 2341 & n.5 (2014). While each are threshold jurisdictional issues, standing doctrine addresses the question of "who may sue," and ripeness doctrine addresses "when a party may sue." *Hispanic Leadership Fund, Inc. v. Fed. Election Comm'n*, 897 F. Supp. 2d 407, 424 (E.D. Va. 2012).

The burden of establishing subject-matter jurisdiction is on the plaintiff. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). However, irrespective of whether either party raises the issue of subject-matter jurisdiction, the court has an independent obligation to ensure that it possesses jurisdiction before proceeding. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005). Once a court determines it lacks subject matter jurisdiction over a claim, it must dismiss that claim. *See Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009).

## IV.    DISCUSSION

In its motion, Duke Energy argues that the Association's Complaint should be dismissed on three grounds: (1) the Association lacks standing; (2) the Association's claims are not ripe for adjudication; and (3) this Court should abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). (*See* ECF No. 10 at 10.)

### A.    Standing

The Court will first consider whether the Association has standing. To establish constitutional standing at the motion to dismiss stage, a plaintiff must plausibly allege three elements. First, the plaintiff must have suffered an injury-in-fact, that is, the plaintiff must allege "an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S.

5

555, 560 (1992) (internal quotation marks and citations omitted). "A concrete injury must be *de facto*; that is, it must actually exist," and it must be "real, and not abstract." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (internal quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of," thus, the injury must be fairly traceable to the defendant's challenged conduct. *Lujan*, 504 U.S. at 560. Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks omitted). "Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts [in the Complaint] demonstrating each element." *Spokeo,* 136 S. Ct. at 1547 (internal quotation marks omitted).

The parties dispute whether Plaintiff has alleged an injury-in-fact sufficient to establish Article III standing. Specifically, Duke Energy argues that the Association's Complaint should be dismissed for lack of standing because the Association has not suffered a cognizable injury, and further, has failed to allege a concrete injury that is traceable to its alleged violation of the CCR Rule. (*See generally* ECF No. 10 at 10–16.) The Association argues, in response, that it and its members have standing to enforce the CCR Rule because their "concrete interests in protecting the Roanoke River basin . . . have been harmed by Duke Energy's failure to comply with the Rule and by its denial of the information to which they are entitled . . . ." (ECF No. 14 at 12.)

Under the "Parties and Standing" section of the Complaint, Plaintiff sets forth the following allegations of injury:

> The Association and its members have been harmed by Duke Energy's unpermitted discharges and unlawful activities. They recreate, fish, and own property in the Roanoke River Basin, including in the vicinity of and downstream from Mayo, including

6

Crutchfield Branch, Mayo Lake, and the Dan River and the waterways into which Duke Energy discharges and into which its waters flow.

. . .

The Association and its members fear contamination of drinking water, wildlife, and river water, by groundwater contamination, discharges, and pollution from coal ash in groundwater and Crutchfield Branch in Duke Energy's Mayo coal ash lagoon. Duke Energy's continuing storage of coal ash in groundwater and in Crutchfield Branch, its contamination, discharges, and pollution from coal ash in groundwater and Crutchfield Branch, and its unlawful plan to make this polluting and unsafe storage of coal ash permanent, are reducing the use and enjoyment by the Association and its members of the Roanoke River Basin, Mayo Lake, Crutchfield Branch, the Dan River, and the waterways into which their waters flow.

. . .

These injuries will not be redressed except by an order from this court requiring Duke Energy to file and comply with a closure plan for Mayo that satisfies the requirements of the Act and the Rule by eliminating infiltration of groundwater and other liquids into Duke Energy's coal ash, precluding the future impoundment of water, sediment, or slurry, and eliminating free liquids from the Mayo coal ash lagoon; as well as ordering Duke Energy to comply with other relief sought in this action.

(ECF No. 1 ¶¶ 13–15.)

### 1. *Lack of Causal Connection*

While there is little question that the Association, in its Complaint, alleges harm to its interest in protecting the Roanoke River Basin, the Court's examination of Plaintiff's Complaint reveals that there is no causal nexus between the harms alleged and the challenged conduct of Duke Energy. Because the Complaint fails to allege facts which establish a causal

connection between the alleged harm and Duke Energy's alleged violation of the CCR Rule, the Association lacks standing.

"It is not enough to merely allege that the defendant[ ] caused both the injury and the challenged conduct—there must be a causal link *between* the two." *N.C. Fisheries Ass'n, Inc. v. Pritzker*, No. 4:14-CV-138-D, 2015 WL 4488509, at *7 (E.D.N.C. July 22, 2015). While the traceability requirement is "not equivalent to a requirement of tort causation," *Nat. Res. Def. Council, Inc. v. Watkins*, 954 F.2d 974, 980 n.7 (4th Cir. 1992) (internal quotation marks omitted), traceability "requires some causal connection between the challenged conduct and the injury," *Pritzker*, 2015 WL 4488509, at *7. Thus, the traceability requirement "ensures that there is a genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000).

Accepting Plaintiff's allegations as true, as the Court must at this juncture,[3] the purported injury here—the diminished use and enjoyment of the Roanoke River Basin, Mayo Lake, Crutchfield Branch, the Dan River, and the connecting waterways—is not directly linked to Duke Energy's preparation of an initial closure plan that allegedly fails to comply with the CCR Rule's requirements regarding its contents. *See Frank Krasner Enters., Ltd. v. Montgomery Cty.*, 401 F.3d 230, 236 (4th Cir. 2005) (finding that, assuming the appellees satisfied the injury-in-fact requirement, they lacked standing because, among other things, the injury was not directly linked to the challenged conduct). Thus, while Plaintiffs may have alleged injury to a

---

[3] Where, as here, the moving party makes a facial challenge to the Court's subject matter jurisdiction, the Court must accept the allegations in the Complaint as true. *Lutfi v. United States*, 527 F. App'x 236, 241 (4th Cir. 2013)

8

protected interest, this injury is not fairly traceable to Duke Energy's challenged conduct in this case.

### 2. *Procedural Injury*

The Association also argues that it has standing to sue because the CCR Rule "established a procedural right to a closure plan that achieves the Rule's performance standards" which Duke Energy has violated "by posting a blatantly defective closure plan." (ECF No. 14 at 15.) According to the Association this alleged violation gives them standing. (*Id.*)

While the violation of a procedural, statutory right may be sufficient, in some circumstances to constitute injury in fact—such as where Congress has conferred a procedural right to protect a concrete interest—a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo,* 136 S. Ct. at 1549. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id. See Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009) (explaining that "deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing"); *Lujan*, 504 U.S. at 572 (citing the following examples in which procedural violation "could impair a separate concrete interest" of plaintiffs: "*e.g.*, the procedural requirement for a hearing prior to denial of their license application, or the procedural requirement for an environmental impact statement before a federal facility is constructed next door to them"). The Court is not persuaded by the Association's argument that, under the facts of this case, the alleged violation

of the CCR Rule, divorced from a concrete harm flowing from the alleged procedural violation is sufficient to establish standing.

Nor is the Court persuaded that *Lujan* or *Pye v. United States*, 269 F.3d 459 (4th Cir. 2001), furthers the Association's position as it contends given that, in each of those cases, the courts' discussion of standing based on a procedural injury makes clear that a violation of procedural rights must be linked to the impairment of a separate concrete interest. *See Pye*, 269 F.3d at 467 (explaining that "adjacent landowners often have standing to challenge the government's failure to follow statutorily prescribed procedures so long as this failure impairs *a separate concrete interest* of the plaintiff") (emphasis added); *Lujan*, 504 U.S. at 572 & n.7 (explaining that standing to sue may exist where plaintiffs "seek[ ] to enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs").

In this case, the Association alleges that Duke Energy's Closure Plan for the Mayo Plant "fails to meet the minimum requirements for closure plans and violates the CCR Rule by leaving the Mayo coal ash in water and impounded behind the dam." (ECF No. 1 ¶ 52.) The Complaint further alleges numerous deficiencies and failures in the Plan and alleges that "[a]s a result of these deficiencies and failures to satisfy the requirements of the [CCR] Rule, Duke Energy's closure plan . . . is open dumping in violation of the requirements of the Rule and the Act." (*Id.* ¶ 57.) The Association's Complaint, however, fails to allege an actual, concrete harm to the Association or its members resulting from this alleged procedural violation of the CCR Rule. Though, as noted above, in the Standing section of the Complaint, Plaintiff articulates allegations of harm to the Association and its members, (*see id.* ¶¶ 13-15),

it fails to allege any facts supporting a connection between these harms and Duke Energy's alleged violation of the Rule; nor does the Court find any such connection.

The Court, therefore, concludes that the Association has failed to sufficiently allege facts to support a procedural injury as its basis for standing to sue.

### 3. *Informational Injury*

Additionally, the Association argues in its brief that it has suffered an informational injury—that because Duke Energy's plan is in violation of the CCR Rule, it has been deprived of information to which it is entitled under the Rule. (ECF No. 14 at 15–17.) The Supreme Court has explained that "'[c]oncrete' is not . . . necessarily synonymous with 'tangible,'" for intangible injuries can also be concrete. *Spokeo*, 136 S. Ct. at 1549. Further, the Fourth Circuit has recognized that "[a]n 'informational injury' is a type of intangible injury that can constitute an Article III injury in fact." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017). However, the Fourth Circuit has explained that "a statutory violation *alone* does not create a concrete informational injury sufficient to support standing." *Id.* According to the Fourth Circuit, "a constitutionally cognizable informational injury requires that a person lack access to information to which he is legally entitled *and* that the denial of that information creates a 'real' harm with an adverse effect." *Id.*

As Duke Energy has pointed out, however, the Association's contention that it has suffered an informational injury is not supported by the allegations in the Complaint. Despite the Association's argument—both in its response brief and at oral argument—that it has

11

suffered an informational injury,[4] the Complaint is completely devoid of any allegation that the Association and its members sought, and have been denied, access to the information required under the CCR Rule, and that such a denial has caused injury. Plaintiffs' allegations, as outlined above, fail to allege any such informational harm.

Moreover, like the Complaint, the supporting Affidavits are devoid of allegations of informational injury. (*See* ECF No. 1-3.) Rather, the allegations of harm contained in these affidavits relate to the alleged negative impact on the use and enjoyment of each members' property (which is adjacent to the Mayo Plant and/or neighboring bodies of water), should the coal ash remain in the unlined basins as part of a cap in place closure system. (*Id.* at 2–15.) These allegations do not relate to injuries caused by an alleged deprivation of information to which the Association or its members are entitled under the CCR Rule. *See Dreher*, 856 F.3d at 345 (explaining that the denial of information to which plaintiff is legally entitled to receive must cause real harm with an adverse effect in order to constitute an informational injury). Thus, the Court concludes that the Association has failed to set forth facts supporting an informational injury as the basis for standing here.

**B.** **Ripeness**

Next, we consider Duke Energy's argument that the Association's claims are not ripe for resolution and should be dismissed. (*See* ECF No. 10 at 16–21.) This Court finds this argument likewise compelling. The Association argues that because "Duke Energy has violated a clear procedural requirement of the Rule . . . to publicly disclose the evidence of

---

[4] *See Dragoslavic v. Ace Hardware Corp.*, 274 F. Supp. 3d 578, 582 (E.D. Tex. 2017) ("Matters or theories raised in a response are not part of the pleadings and do not supplement the allegations in the complaint." (internal quotation marks omitted)).

compliance, the violation is necessarily ripe for enforcement." (ECF No. 14 at 20.) According to Plaintiff, "[b]y failing to prepare and post a compliant plan by the deadline, by proposing a plan without the required protections of the performance standards, and by depriving the Association of the protections and information to which it is entitled, Duke Energy is violating the Rule and is subject to enforcement action." (*Id.* at 21.) Plaintiff bears the burden of showing ripeness. *See Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006).

"Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (internal quotation marks omitted). Thus, ripeness is essentially a question of timing. *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974). "A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'" *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (internal quotation marks omitted). In evaluating ripeness, courts must consider "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013). "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Miller*, 462 F.3d at 319. The "hardship" consideration in a ripeness analysis is "measured by the immediacy of the threat and the burden imposed" on a plaintiff. *Charter Fed. Sav. Bank v. Office of Thrift Supervision,* 976 F.2d 203, 208–09 (4th Cir. 1992). Essentially,

13

the ripeness considerations contemplate that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

The Court finds that this matter is not ripe for three reasons. First, the issue of whether the substance of Duke Energy's initial Closure Plan ultimately meets the performance standards outlined in the Rule goes beyond a purely legal question and would require further factual development. *See Nat'l Park Hospitality Ass'n*, 538 U.S. at 812. Contrary to Plaintiff's contention that the issue before the Court is "site-specific and straightforward," (ECF No. 14 at 22), judicial review of the initial Closure Plan would involve extensive, time-consuming judicial consideration of the specifics of an elaborate, technical plan to determine whether, and to what extent, if any, the Plan achieves the Rule's performance standards. *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 736 (1998).

Second, the action giving rise to this controversy—the publishing of the initial Closure Plan— is not final and is wholly "dependent on future uncertainties," *Miller*, 462 F.3d at 319. As previously discussed, the CCR Rule contemplates that owners and operators of CCR units would publish initial closure plans which are subject to amendment. *See* 40 C.F.R. § 257.102(b)(3). Accordingly, the Rule sets forth circumstances in which "the initial or any subsequent written closure plan" may be amended, as well as the circumstances in which the written closure plan must be amended. *See id.* It is, therefore, likely that there will be future amendments and revisions to the initial Closure Plan based on any number of circumstances. The uncertainty as to whether, and in what form, Duke Energy's initial closure Plan will

ultimately be implemented weighs against a finding that this matter is now ripe for a judicial decision.

Third, as to the hardship prong of the ripeness analysis, the cost to Plaintiff of denying review would be minimal, if any, given the preliminary nature of the initial closure plan. As previously stated, the CCR Rule contemplates the implementation of state regulations that may impose even more stringent requirements which are not preempted by the Rule's minimum requirements. *See* 80 Fed. Reg. at 21,332; *see also* 40 C.F.R. § 257.52(a) ("Compliance with the [CCR Rule] does not affect the need for the owner or operator of a CCR landfill, [or] CCR surface impoundment, . . . to comply with all other applicable federal, *state*, tribal, or local laws . . . ." (emphasis added)). Here, before Duke Energy can begin to implement its closure plan, it must also adhere to the requirements set forth by the state. Under the state regulatory scheme, Duke Energy has until December 31, 2019—more than twenty months away— to submit its proposed closure plan which will then be subject to public participation prior to NCDEQ's determination of whether to approve Duke Energy's proposed plan. *See* N.C. Gen. Stat. § 130A-309.214(a), (b). In light of these circumstances, denying review of the initial closure plan at this time would cause little, if any, hardship to Plaintiff.

Accordingly, because neither the Association nor anyone else will experience any effects from the implementation of Duke Energy's Closure Plan unless and until NCDEQ grants final approval at some point after December 2019, this case is not ripe. *See New Hanover Twp. v. U.S. Army Corps of Eng'rs*, 992 F.2d 470, 473 (3d Cir. 1993).

## V. CONCLUSION

Based on the above, the Court concludes that the Association has failed to establish that it has suffered a concrete injury that is fairly traceable to Duke Energy's alleged violation of the CCR Rule. As such, Plaintiff lacks standing, under Article III, to bring suit. The Court further concludes that this matter is not ripe for judicial review. Accordingly, the claims against Duke Energy in Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction. Because the Court holds that it lacks subject matter jurisdiction, it need not address Duke Energy's additional argument that the Court should abstain from deciding this case under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

For the reasons stated herein, the Court enters the following:

### ORDER

IT IS THEREFORE ORDERED that Duke Energy Progress, LLC's Motion to Dismiss Plaintiff's Complaint, (ECF No. 9), is GRANTED, and this action is DISMISSED WITHOUT PREJUDICE.

A Judgment dismissing this action will be entered contemporaneously with this Order.

This, the 29th day of March, 2018.

/s/ Loretta C. Biggs
United States District Judge